[Crim. No. 87. Fifth Dist. Dec. 30, 1963.]

THE PEOPLE, Plaintiff and Respondent, v. LAWRENCE LEE BABCOCK, Defendant and Appellant.

C. Ernest Rushing for Defendant and Appellant.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Raymond M. Momboisse, Deputy Attorney General, for Plaintiff and Respondent.

STONE, J.—Appellant was convicted of attempted burglary after trial by a jury. The conviction resulted from a sequence of events commencing about 3 a.m. February 4, 1963, near a drive-in located in the City of Modesto. A fence separated the drive-in from the home of Mr. Weldon, whose driveway ran between the fence and his house. An automobile entered the driveway about 3 a.m. and when Weldon turned on a light, the car backed out and parked across the street. A man walked from the car toward the drive-in, so Weldon turned off his light and went outside. Upon hearing a tapping sound, he looked over the fence and saw a man prying on the drive-in door. Weldon then went to the other side of the lot, threw a pop bottle over the building to divert the man's attention, and told Mrs. Weldon to call the owner of

the drive-in, who lived nearby. The man walked across the street and disappeared. When the owner of the drive-in arrived he and Weldon went to the car, found it empty, and called the police. The pin hinges had been removed from the drive-in door and one lock had been broken.

An officer arrived, inspected the automobile and noticed that the hood was still warm. The car belonged to appellant Babcock, so the officer went to the home of his father, with whom Babcock lived. The father told the officer his son was not there. This was about 5 a.m.

About 8 a.m., appellant, together with defendant Van Clief and his wife, appeared at the city police office. Van Clief told a detective sergeant that appellant Babcock, Van Clief and his wife were in Babcock's car the previous night, driving toward Modesto at approximately 11 p.m., when because of carburetor trouble the car stopped running and the two men pushed it to the location where the police found it across from the drive-in. Van Clief told the officer that he, his wife, and appellant went to the Van Clief home for the rest of the night. The detective then talked to appellant, who corroborated Van Clief's story. Nevertheless the detective put both appellant and Van Clief under arrest.

Later that day Van Clief told the officer that the truth was that he and his wife were at home asleep during the early morning hours when Babcock awakened him and said he had had car trouble and needed a place to sleep. He said, also, that Babcock told him he "was in a little trouble" and needed to "establish an alibi" for the night. The officer advised appellant of the Van Clief admission, to which appellant replied that he was a federal parolee and did not blame Van Clief for trying to get out of this trouble. Later another police sergeant talked to appellant, who told him that Van Clief had not been with him the night of February 3, but that a Ray Smith had.

At the trial, however, Babcock testified that he was alone on the night in question. He testified that the car stopped because of carburetor trouble, despite the fact that he was able to back the car out of Weldon's driveway and park it across the street. He also testified that he went to Van Clief's home to sleep until morning because it was nearer to the place where he left the car than his own home.

Appellant's first argument that the officer's testimony concerning the conversation in which appellant revealed his parolee status was error, presupposes that the evidence was

inadmissible, a presupposition we think untenable. Appellant attempted to establish an alibi by persuading a friend to fabricate a story which would exculpate him. The friend related his story to the officers, who disbelieved him and charged him with attempted burglary along with appellant. Thereafter his friend and codefendant recanted, and admitted the hoax to the police. When appellant was confronted with this situation, he told the officer he was a federal parolee and that he did not blame his friend for trying to get out of the predicament the best way he could. Subsequently appellant again lied about his companion the night of the attempted burglary by telling officers that a Ray Smith was with him, rather than his codefendant, Van Clief. Yet at the trial appellant testified that he was alone until he arrived at Van Clief's home.

■ The officer's testimony to which appellant takes exception, was relevant to the issue of appellant's fabrication of an alibi. As such it was admissible as evidence bearing on appellant's consciousness of guilt. (*People* v. *Ford,* 200 Cal. App.2d 905, 920 [19 Cal.Rptr. 758].) ■ Two additional circumstances combine to dispel any reversible error emanating from the police officer's relation of appellant's statement that he was on federal parole. First, no objection was made by defense counsel nor was the court requested to admonish the jury to disregard the remarks. Second, appellant as part of his defense testified to his status as a federal probationer. On direct examination by his counsel, appellant testified as follows: ''... my Dad told me that the Sheriff was looking for me because they had found my car next to some place that was supposed to have been burglarized. Q. Did he tell you where? A. No, sir, he didn't. Q. What did you do then? A. The first thing I thought of is that Federal probation. Q. Were you on probation from the Federal Court? A. Yes, sir. Q. What is that for? A. For cashing my wife's checks. Q. For cashing your wife's checks? A. Yes, sir, when I was in the Army, the allotment to my wife. Q. Go ahead, you thought of the Federal probation and what happened? A. Well, that scared me right there, you know, so I knew nobody had been with me the night before, so there was nobody to say that I hadn't done anything, so I asked Van Clief to say that he had been with me part of the evening and we didn't realize that it was anything like this, so he said he would.''

It is difficult to see how prejudice resulted from the officer's testimony concerning the same facts which appellant himself related by way of defense. (*People* v. *Garcia,* 151

Cal.App.2d 196, 200 [311 P.2d 45]; *People* v. *Healey*, 52 Cal.App. 563, 565 [199 P. 551].)

■ Appellant next argues that since the testimony that he was on federal probation or parole was before the jury, he was entitled to have instruction CALJIC 54-B given, and that it was reversible error for the court to refuse to give it.

The proffered instruction limits consideration of proof of conviction of a felony to impeachment of the witness and to a determination of the credibility of the witness. Aside from the question of whether conviction of a felony was shown, it would have been improper to so limit the jury in its consideration of the evidence here because appellant's testimony concerning his parole was offered as a defense. He justified his fabrication of an alibi upon his mental state. He professed fright because he was a federal parolee or probationer, and the jury was under a duty to consider his testimony in that light. Furthermore, respondent was entitled to have the jury weigh the same evidence in relation to appellant's consciousness of guilt.

Finally, appellant assigns as reversible error reference by an officer to a polygraph test. The record discloses the following: "Q. And that is the conversation you had with him at that time? A. Yes. I did ask him if he would be willing to take a polygraph test. MR. HANCOCK: I object to that, your Honor. THE COURT: The objection is sustained. The statement by Mr. Bear in that regard is stricken from the record and the jury is admonished to absolutely disregard it. It is not to be considered in any way."

■ No doubt it was error for the officer to testify that he suggested to defendant that he submit to a polygraph test. (*People* v. *Aragon*, 154 Cal.App.2d 646, 658 [316 P.2d 370].) Although, as respondent points out, the officer was not permitted to testify whether appellant refused or agreed to take the polygraph test, the inference is clear, nevertheless, that appellant either refused or made an unsatisfactory showing; otherwise the officer would not have mentioned the subject. Since the result of a polygraph test has yet to be recognized as admissible evidence, we are compelled to conclude that it was error to imply that the accused refused to take the test. The pertinent question is whether it was reversible error.

■ We conclude from a review of the entire record, including the prompt objection by appellant's trial counsel and the court's admonition to the jury to disregard the statement,

818

that the error was not so prejudicial as to warrant a reversal of the judgment. (See *People* v. *Schiers,* 160 Cal.App.2d 364, 372 [324 P.2d 981, 329 P.2d 1]; *People* v. *Parrella,* 158 Cal. App.2d 140, 147 [322 P.2d 83].)

The judgment is affirmed.

Conley, P. J., and Brown (R. M.), J., concurred.